UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA DAVIS-HARRIS,

        Plaintiff,

v.

CARRINGTON MORTGAGE
SERVICES, L.L.C., *et al.*,

        Defendants.

Case No. 2:25-cv-11617
Hon. Matthew F. Leitman
Magistrate Judge Anthony P. Patti

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT DEFENDANT CARRINGTON MORTGAGE SERVICES, L.L.C.'S
MOTION TO DISMISS (ECF No. 14)</u>**

**I.     RECOMMENDATION**:  For the reasons set forth in greater detail below,

the Court should **GRANT** Defendant Carrington Mortgage Services, L.L.C.'s

motion to dismiss (ECF No. 14).

**II.     REPORT:**

    **A.     Background**

        **1.     August 2007 Loan Origination**

In August 2007, Julia Harris borrowed $312,550 from lender Countrywide

Home Loans, Inc., and the promissory note was secured by a mortgage on the

property at 24658 Pembrooke Drive, Southfield, MI 48034.  (ECF No. 14-1 [Doc

Id # 17039930008007].)  The loan was modified on April 7, 2010, with a new

1

mortgage amount of $334,817.78.  (ECF No. 14-2 [# 170399300].)  On October 3, 2013, the mortgage was assigned to the Bank of New York Mellon ("BONYM"). (ECF No. 14-3 [# 170399300].)

In August 2017, the servicing of the mortgage was transferred from Ditech Financial, L.L.C. to Carrington Mortgage Services, L.L.C. ("CMS").  (ECF No. 14-4 [Ditech Financial LLC Loan # 82947683, CMS Loan # 7000176692].)[1] CMS's August 25, 2017 "notice of servicing transfer" (*id.*, PageID.144-145), was accompanied by an FDCPA notice (*id.*, PageID.146), a list of "important disclosures" (*id.*, PageID.148), and a CMS document titled, "Quick Reference Customer Self Help" (*id.*, PageID.150-151).  *Inter alia*, the FDCPA notice informed Plaintiff that "the amount of the debt" she then owed was $353,115.57." (*Id.*, PageID.146.)

### 2.    Plaintiff's February 2023 Attempt to Validate Debt

On or about February 21, 2023, Harris sought validation of debt by way of letters addressed to:  (1) the law firm of Randall S. Miller & Associates in Bloomfield Hills, Michigan (*see* ECF No. 14-5; ECF No. 14-7, PageID.214-223 [1st letter]; *see also id.*, PageID.224-225); and, (2) CMS in Westfield, Indiana (*see*

---

[1] In her complaint, Plaintiff alleges she "does not recognize the account # 7000176692 associated with its original mortgage documents[,]" (ECF No. 1, PageID.3-4), but it appears this is simply each mortgage servicer using its own account number.

ECF No. 14-7, PageID.207-211 [2nd letter]).[2]  CMS responded by letters dated February 24, 2023, March 1, 2023 and April 28, 2023.  (ECF Nos. 14-6, 14-12, 14-13.)  The April 28, 2023 letter stated, *inter alia*:

> As of the date of this letter the above-referenced loan is contractually due for the May 1, 2023 payment, for a total amount due of $1,874.39. *The last payment received and posted to the loan was on March 20, 2023 when Carrington received $14,194.24 from the Michigan Homeowner Assistance Fund which was applied to reinstate the loan and bring the loan current.*

(ECF No. 14-6, PageID.158, 185 (emphasis added).)  The letter also lists a current principal balance of $304,230.76, an escrow balance of $3,036.66, and an unapplied balance of $0.00.  (*Id*., PageID.158, 185; *see also* ECF No. 14-9, PageID.303; ECF No. 42, PageID.577 [Transaction History].)

### B.      Instant Lawsuit

#### 1.      Plaintiff's May 2025 Attempt to Validate Debt

Although the instant lawsuit mentions the purchase of 24658 Pembrooke Drive in 2007 and the associated mortgage with Countrywide Home Loans (*see* ECF No. 1, PageID.4-5), this lawsuit concerns the events of April, May, and June 2025 (*see id*., PageID.1, 3, 5, 6, 8).  Davis-Harris alleges that, on April 17, 2025, Defendant – presumably CMS – "held $1,895.89 in unapplied funds the Plaintiff

---

[2] The record of this case also contains a copy of a letter dated February 22, 2023 from "VIP Case Management Staffing, LLC" – advising it had been retained to represent Harris – to "Randall S. Miller & Associates, P.C."  (*See* ECF No. 14-7, PageID.212-213.)

had paid." (*Id.*, PageID.8 ¶ 1.9.)  She further alleges that, on April 23, 2025, she

received an inaccurate debt collection letter (*id.*, PageID.5 ¶ 1.6), and she also

alleges to have "requested validation of the disputed debt of May 1, 2025

invoice[,]" (*id.*, PageID.8 ¶ 1.9).

The events of May 2025 are clarified by multiple documents supplied by

CMS, which are central to Davis-Harris's claims.  *See Greenberg v. Life Ins. Co. of

Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al.,

Moore's Federal Practice § 56.30[4] (3d ed.1998)).[3]  On several occasions in May

2025, Orlans Law Group, P.L.L.C. (OLG) published or posted notice of

foreclosure by sale on June 3, 2025 (ECF Nos. 14-10, 14-11), in each case listing

$404,062.89 as the amount claimed to be due.  On May 8, 2025, Julia Davis-Harris

demanded validation of debt from OLG.  (ECF No. 14-8 [3rd letter]), which –

incidentally – is stamped received by CMS's Research Department on May 12,

2025 (*id.*, PageID.227, 229).[4]  In any event, OLG responded by a letter dated May

---

[3] *See also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("we will
consider the plan documents along with the complaint, because they were
incorporated through reference to the plaintiff's rights under the plans, and they are
central to plaintiff's claims.")  (ECF No. 14, PageID.86 n.2, PageID.89 n.3.)

[4] The record of this case also contains a copy of a May 8, 2025 email from Nikki
Dell of VIP Case Management to OLG, purporting to "represent Julia Davis-
Harris[,]" requesting "all details concerning to [sic] your claim of [sic] the
property[,]" demanding a check for $500,000, and exhorting the targeted debt
collector to "CEASE AND Desist[.]"  (ECF No. 14-9, PageID.243-244.)

12, 2025 (ECF No. 14-9), attaching a chart indicating that, in April 2025, the principal balance was $297,873.33, the escrow balance was $-337.33, and the late charge balance was $-446.60 (*id.*, PageID.306; ECF No. 1, PageID.31).

Davis-Harris alleges that a cease and desist letter was given on May 13, 2025 (ECF No. 1, PageID.6 ¶ 1.8), and she "disputed the debt in writing prior to May 30, 2025 . . . [,]" as requested by OLG's collection letter (*id.*, PageID.1, 3).

### 2.    May 30, 2025 Complaint

Meanwhile, on May 30, 2025 – *i.e.*, after the initiation of the foreclosure process – Julia Davis-Harris ("Plaintiff"), proceeding *in pro per*, filed a fee-paid complaint in this Court against CMS and OLG.  (ECF No. 1; ECF No. 14, PageID.88-89.)  Plaintiff pleads claims of:  (1) Wrongful Foreclosure, based on her February 21, 2023 letter to CMS and an allegedly inaccurate April 23, 2025 debt collection letter; (2) Fair Debt Collection Practices Act (FDCPA) violation, based on an alleged April 17, 2025 holding of funds and seemingly her May 8, 2025 letter to OLG; (3) Real Estate Settlement Procedures Act (RESPA) violation, concerning 12 U.S.C. § 2605 ("Servicing of mortgage loans and administration of escrow accounts") and perhaps also "force-placed insurance"; (4) slander of credit; and, (5) infliction of emotional distress.  (*Id.*, PageID.5-11.)  She seeks monetary relief in "the amount of $75,000.00 [to] be awarded for Wrongful Foreclosure and Administrative Default costs."  (*Id.*, PageID.11.)

Although the Court entered orders in June 2025 temporarily restraining the sheriff's sale of 24658 Pembrooke Drive (*see* ECF Nos. 6, 10) and setting certain deadlines (*see* ECF No. 16), the Court's August 14, 2025 order denied several motions (*see* ECF No. 33), including Plaintiff's June 24, 2025 motion to extend the temporary restraining order (*see* ECF No. 19).  On September 3, 2025, David-Harris filed a lawsuit against BONYM in state court, with the court having entered an order regarding BONYM's motion for summary disposition  on January 22, 2026.  *See* Case No. 2025-217340-CZ (Oakland County Circuit Court).  The Undersigned previously issued a report and recommendation as to Defendant OLG's motion to dismiss, objections to which remain pending.  (*See* ECF Nos. 49, 50, 51, 52, 53.)

## C.    Pending Motion

Judge Leitman has referred this case to me for pretrial matters.  (ECF No. 34.)  Currently before the Court is CMS's June 23, 2025 motion to dismiss (ECF No. 14), as to which Plaintiff has filed a response (ECF No. 32) and an objection (ECF Nos. 41, 42),[5] and CMS has filed a reply (ECF No. 45).  This motion is now ready for decision.

---

[5] Plaintiff's "objections" are identical (*compare* ECF No. 41, PageID.518-522; *with*, ECF No. 42, PageID.560-564); however, the exhibits differ in number (*compare* ECF No. 41, PageID.523-559 [3 exhibits]; *with*, ECF No. 42, PageID.565-593 [4 exhibits]).

**D.   Fed. R. Civ. P. 12**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[6]

### E.    Analysis

### 1.    Jurisdiction

Plaintiff alleges jurisdiction based on diversity of citizenship (28 U.S.C. §

1332), federal question (28 U.S.C. § 1331), and civil rights (28 U.S.C. § 1343).

(ECF No. 1, PageID.4-5.)  "A pleading that states a claim for relief must contain  .

. . a short and plain statement of the grounds for the court's jurisdiction, unless the

court already has jurisdiction and the claim needs no new jurisdictional support[.]"

Fed. R. Civ. P. 8(a)(1).

This case lacks complete diversity jurisdiction.  To the extent Plaintiff

alleges "the parties are citizens of different states . . . [,]" (ECF No. 1, PageID.4),

---

[6] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

"[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Although Plaintiff (Michigan) and Defendant CMS (California) are citizens of different states, Plaintiff pleads that Defendant OLG's principal place of business is in Michigan. (ECF No. 1, PageID.4 ¶¶ 1.2, 1.3.) Thus, Plaintiff and Defendant OLG are citizens of the same state.

Nonetheless, because Plaintiff clearly attempts to bring causes of action based on federal statutes – *e.g.*, FDCPA, RESPA – the Court proceeds as if jurisdiction is based on a federal question. Moreover, notwithstanding CMS's Fed. R. Civ. P. 12(b)(1) argument that Plaintiff lacks standing to assert any RESPA or FDCPA clams (*see* ECF No. 14, PageID.91-94), the Undersigned will forego analysis of that argument for the time being and consider whether Plaintiff has stated any such claims "upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

### 2.    FDCPA Validation of debts (15 U.S.C. § 1692g)

The complaint makes multiple references to the FDCPA. (ECF No. 1, PageID.2, 3, 5, 8.) To the extent Plaintiff intended Count II to plead a cause of action based on the FDCPA, she does not allege which of its many sections – *i.e.*,

15 U.S.C. §§ 1692-1692p – was violated.  (*See* ECF No. 1, PageID.5-8 ¶¶ 1.5-1.8.)

Nonetheless, the introductory section of Plaintiff's pleading provides a clue, as it

cites "15 U.S.C. § 1682g(b)[,]" (ECF No. 1, PageID.2), which the Court suspects is

an intended reference to 15 U.S.C. 1692g ("Validation of debts"), Subsection (b)

of which provides:

> If the consumer notifies the debt collector in writing within the **thirty-day period** described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, *until the debt collector obtains <u>verification of the debt or a copy of a judgment, or the name and address of the original creditor</u>, and a <u>copy</u> of such verification or judgment, or name and address of the original creditor, <u>is mailed to the consumer by the debt collector</u>*.  Collection activities and communications that do not otherwise violate this subchapter may continue during the **30-day period** referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.  Any collection activities and communication during the **30-day period** may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b) ("Disputed debts") (emphases added).

To the extent Plaintiff's complaint challenges the propriety of CMS's (or,

for that matter, OLG's) responses, such claims are unavailing.

### a.      February 2023 – April 2023

Preliminarily, as described above, Plaintiff sent letters dated February 21,

2023 (*see* ECF Nos. 14-5, 14-7), and CMS responded by letters dated February 24,

2023, March 1, 2023 and April 28, 2023 (*see* ECF Nos. 14-6, 14-12, 14-13). Although Plaintiff quotes from her February 21, 2023 letter to CMS within her cause of action for wrongful termination, it seems that Plaintiff's FDCPA claim is related to the events of April 2025 and May 2025.  (*See* ECF No. 1, PageID.6-9 [Counts I & II]; ECF No. 14-7, PageID.209-210.)

### b.      April 2025 and May 2025

The Court notes Plaintiff's multiple allegations challenging the accuracy of her account in April 2025 and May 2025 (*see* ECF No. 1, PageID.5, 6, 8), which include but are not limited to Plaintiff's introductory allegation that CMS "continued to add late fees and hold Plaintiff['s] unapplied funds until a full payment was completed[,]" (*id.*, PageID.2), and Plaintiff's references within her cause of action for "wrongful foreclosure" (Count I) to her February 21, 2023 letter to CMS (*id.*, PageID.6-7 ¶ 1.8) and to having received an inaccurate debt collection letter on April 23, 2025 (*id.*, PageID.5 ¶ 1.6).  Plaintiff alleges she "requested validation of the disputed debt of May 1, 2025 invoice[,]" (*id.*, PageID.8 ¶ 1.9), and a cease and desist letter was provided on May 13, 2025 (*id.*, PageID.6 ¶ 1.8). (*See also id.*, PageID.1, 3.)

### i.      Unapplied $1,895.89

As best as the Court can discern, Plaintiff's complaint alleges two *particular* areas of dispute.  First, within Count II, Plaintiff alleges that Defendants violated

the FDCPA by misrepresenting the "character amount[,]" (ECF No. 1, PageID.8 ¶ 1.9), further alleging that, on April 17, 2025,  Defendant "held $1,895.89 in unapplied funds the Plaintiff had paid." (*Id*.)  This appears to be a reference to two April 3, 2025 line items on the chart attached to OLG's May 12, 2025 response (ECF No. 14-9, PageID.306) and/or the amount listed in CMS's June 25, 2025 letter as "unapplied balance" (ECF No. 42, PageID.591-593; *see also id*., PageID.574-589 [Transaction History]).  The transaction history for Plaintiff's account indicates that, on April 3, 2025, the principal balance was $297,873.33, the escrow balance was $-337.33, the late charge balance was $-446.60, and the unapplied amount balance was $1,895.89.  (ECF No. 14-9, PageID.306; *see also* ECF No. 1, PageID.31.)  Perhaps this transaction history is a basis for Davis-Harris's allegation that she received an inaccurate debt collection letter on April 23, 2025.  (*Id*., PageID.5 ¶ 1.6.)

Although an April 2025 debt collection letter from CMS (or OLG) does not appear to be in the record of this case, the Court notes that Plaintiff's May 8, 2025 debt validation demand purports to be a response to a May 6, 2025 communication from OLG.  (*See* ECF No. 14-8, PageID.227, 229.)  And the Court suspects the alleged May 6, 2025 communication is the basis for Plaintiff's allegation that she "was not given proper notice to dispute the [OLG] debt collection letter as required

under the [FDCPA][,]" even though she "disputed the debt prior to May 30, 2025 as requested by [OLG's] collection letter."  (ECF No. 1, PageID.3.)

However, as noted above, OLG responded by a letter dated May 12, 2025 (ECF No. 14-9), representing, *inter alia*, that the current mortgagee was BONYM and the current servicer was CMS (*id*., PageID.241), and OLG attached the above-described chart of the account transaction history through April 3, 2025, which indicated that the principal balance was $297,873.33, the escrow balance was $-337.33, the late charge balance was $-446.60, and the unapplied amount balance was $1,895.89 (*id*., PageID.306; *see also* ECF No. 1, PageID.31).

And, setting aside for the moment Plaintiff's allegation that a cease and desist letter was provided on May 13, 2025 (*id*., PageID.6 ¶ 1.8) – which is perhaps a reference to the previously mentioned May 8, 2025 email from VIP Case Management (*see* ECF No. 14-9, PageID.243) – the record of the case now contains a more recent letter from CMS and a more recent CMS Transaction History – each dated June 25, 2025 (*see* ECF No. 42, PageID.574-587, 591-593). The letter informs Harris that the current principal balance is $297,873.33, the escrow balance is $-337.33, and the unapplied balance is $1,895.89.  (ECF No. 42, PageID.592; *see also id*., PageID.574 [Transaction History].)

In sum, Plaintiff alleges, that she received a debt collection letter on April 23, 2025, seemingly from OLG (ECF No. 1, PageID.3, 5 ¶ 1.6), and the record

13

contains evidence of Plaintiff's May 8, 2025 debt validation demand (*see* ECF No. 14-8), OLG's May 12, 2025 letter, documentation and transaction history (*see* ECF No. 14-9), and the alleged May 13, 2025 cease and desist letter (ECF No. 1, PageID.6 ¶ 1.8), as well as CMS's June 25, 2025 letter and transaction history (*see* ECF No. 42, PageID.574-587, 591-593); however, Plaintiff does not allege that CMS failed to "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification . . . and a copy of such verification . . . is mailed to the consumer by the debt collector[,]" 15 U.S.C. § 1692g(b).[7]  *See, e.g., Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) ("Because Transworld ceased collection activities after the receipt of Smith's cease and desist letter, *see supra* (Transworld's second collection letter resulted from a bona fide error), Transworld did not violate the provisions of 15 U.S.C. § 1692g(b).").

---

[7] Although Plaintiff alleges that "Defendants scheduled a foreclosure sale date within 13 days of sending a debt validation [l]etter[,]" (ECF No. 1, PageID.8), it seems the June 3, 2025 foreclosure sale first appeared in OLG's May 6, 2025 publication (*see* ECF No. 14-10) and OLG's May 12, 2025 posting (*see* ECF No. 14-11).  Even if OLG's publications continued until May 27, 2025 (*see* ECF No. 14-10), we know the June 3, 2025 sale did not occur, due to the Court's June 2025 temporary restraining orders (ECF Nos. 6, 10; ECF No. 14, PageID.89).  Although the Court declined to extend the TRO in August 2015 (ECF No. 33), at the September 22, 2025 video status conference, counsel for Defendant CMS informed the Court that the sheriff's sale had been adjourned to October 28, 2025.  Although during the October 15, 2025 video status conference the Court denied Plaintiff's October 14, 2025 *ex parte* motion to stay proceedings pending quiet title complaint (*see* ECF No. 47), the Undersigned has no knowledge of the foreclosure sale being rescheduled.

Moreover, Plaintiff alleges that "no copies [were] presented to the plaintiff of court orders, judgment liens, settlement payments, etc[.][,]" (*id.*, PageID.7); yet, the Sixth Circuit has explained:

> The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation.  This information does not have to be extensive.  It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785–86 (6th Cir. 2014).  Although OLG's May 12, 2025 letter does not explain the amount of $1,895.89, the accompanying transaction history lists this amount amongst transactions dated April 3, 2025 (*see* ECF No. 14-9, PageID.241-242, 306), and CMS's June 25, 2025 letter references an "unapplied balance" amount of $1,895.89 and appears to have been accompanied by a transaction history listing this amount amongst transactions dated February 28, 2025 and April 3, 2025 (*see* ECF No. 42, PageID.592, 574).  This detail is sufficient for Plaintiff to dispute her payment obligation.  *See Haddad*, 758 F.3d at 784 ("the verification requirement is satisfied where the debtor 'could sufficiently dispute the payment obligation.'") (quoting *Dunham v. Portfolio Recovery Assocs., LLC,* 663 F.3d 997, 1004 (8th Cir.2011)).  *See also Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)

15

("verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 783 (6th Cir. 2014) (quoting *Chaudhry*, 174 F.3d at 406).  Thus, Plaintiff has not stated a claim that Defendant CMS violated its verification obligations under 15 U.S.C. § 1692g(b).

### ii.  Force-placed insurance

The second particular area of dispute is Plaintiff's allegation that CMS "forced insurance amount to the Plaintiff['s] alleged mortgage payments without verifying Plaintiff's insurance policy already obtained and paid through Citizen Insurance Company."  (ECF No. 1, PageID.1.)  "Force-placed insurance," which is defined in RESPA, means "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage."  12 U.S.C. § 2605(k)(2).

Plaintiff alleges that CMS "proceeded to add its [own] insurance . . . [,]" thereby increasing "the amount of [her] monthly statements[,]" but "refused to credit the insurance amount back to the Plaintiff in the amount of over $3,000.00." (*Id*., PageID.1-2; *see also id*., PageID.8.)  Plaintiff pleads that she "paid over

16

$2[,]500 to $2,800 a month to repay force insurance [she] never authorized[,]" and she "purchased insurance through Citizen Insurance[,]" which "was withdrawing each month a total of $176 a month for Homeowners Insurance for over 8 to 10 payments[,]" (ECF No. 1, PageID.2), further explaining in her motion response that, in April 2024, she "was current with Homeowners Insurance and agreed with Citizens Insurance to [e]lectronically withdraw $176.00 from [her] Comerica Banking account."  (ECF No. 32, PageID.505 ¶ 42.)  Plaintiff also alleges that CMS claimed "it paid force insurance amount of $495 (estimate) for a total of 8 months or more[,]" (ECF No. 1, PageID.2), although this is perhaps a reference to *six* payments, each in the amount of $496.85, in May, June, July, August, September, and October 2024 (*see* ECF No. 42, PageID.575-576), for a total of $2,981.10.  (*See also* ECF No. 32, PageID.506 ¶ 47; ECF No. 43, PageID.596, 598.)  Plaintiff "was paying over $700 a month for homeowners['] insurance[,]" "[she] requested the Defendants to provide proof of its insurance company and policy premiums it was collecting[,]" but "Defendants failed to provide the documentation."  (*Id.*)

However, to the extent Plaintiff alleges that CMS "failed to follow *FDCPA* guidelines and failed to provide proof of force insurance and amounts forwarded to the Plaintiff[']s] alleged account[,]" (ECF No. 1, PageID.8 (emphasis added); *see also* ECF No. 42, PageID.564), the Court would have expected a cause of action

based on a related subsection of RESPA's 12 U.S.C. § 2605 ("Servicing of mortgage loans and administration of escrow accounts"), such as the servicer prohibition described in Section 2605(k)(1)(A), or the requirements described in Section 2605(l), or the limitations described in Section 2605(m).  As described below, Plaintiff's RESPA claim (Count III) is narrower in scope.

### iii.        Efforts to understand the amount of Plaintiff's force-place insurance claim

Neither CMS's motion (ECF No. 14) nor its status reports (ECF Nos. 38, 46) nor its reply (ECF No. 45) address force-placed insurance.  Recognizing that "the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers," *Haines*, 404 U.S. at 520, the Court made every reasonable effort to understand the accounting behind this claim by looking to Plaintiff's response (ECF No. 32), objection (ECF No. 42), and status report (ECF No. 43).

However, the Court does not know what to make of Plaintiff's contentions that she "paid a total of $8,196.31 in home insurance[,]" (ECF No. 32, PageID.506 ¶ 49) or that the total for force-placed insurance was "$8,923.78[,]" (ECF No. 43, PageID.596).  Also, suggesting that force-placed insurance was the impetus for her May 30, 2025 motion for temporary restraining order (*see* ECF No. 3), Plaintiff contends that CMS "forced the insurance in the amount of over $12,000.00[,]" "double charged the Plaintiff the insurance it paid and forced placed the insurance

in over $12,000[,]" and "failed to validate a claim or its purpose of forced placed insurance in the amount of over $12,000.00[,]" (ECF No. 43, PageID.598, 596). Moreover, Plaintiff contends that CMS "forced placed a total of $3,594.85" in April 2024 (*id*., PageID.596), but this amount appears to be Plaintiff's March 15, 2024 *escrow balance* (ECF No. 42, PageID.576; ECF No. 1, PageID.29). Additionally, Plaintiff alleges "Defendants were requesting a total of $5,861.75[,]" (ECF No. 1, PageID.8 ¶ 1.9), which is similar in number but not a match to Plaintiff's separate contentions that CMS "forced insurance in the amount of $5,962.20[,]" (ECF No. 32, PageID.505-506 ¶¶ 43, 45, 48) or that CMS "forced placed $5,328.93" in April 2025 (ECF No. 43, PageID.596). Unfortunately, even though Plaintiff asserts her "evidence will show [she] had home insurance coverage with no lapse in coverage[,]" (ECF No. 32, PageID.507 ¶ 54), these various numbers do not clarify Plaintiff's attempted force-placed insurance claim.

      iv.        **Attempts to understand two other amounts in Plaintiff's pleading**

Similarly, the Court has endeavored to discern how Plaintiff arrived at the various amounts stated in her pleading. Although it is clear Plaintiff intends to contest the "unapplied $1,895.89" or to challenge the "force-placed insurance," some claims have been more difficult to discern.

For example, Plaintiff seems to allege that CMS was seeking $12,751.80. (ECF No. 1, PageID.1; *see also* ECF No. 32, PageID.504-505 ¶¶ 37, 38; ECF No.

19

43, PageID.594, 595.)  In a separate status report, she references payments made from October 2024 to March 2025 – contending in most cases to have paid more than the amount due – and claims to have "paid a total of $13,502.21" after March 2025.  (ECF No. 43, PageID.594-595; *see also* ECF No. 32, PageID.505-506 ¶¶ 41, 46.)  Plaintiff alleges in her status report that she "had a positive balance of over $5,000 at the date of foreclosure[,]" and "did not receive a default notice because the Plaintiff was not in default[,]" (ECF No. 43, PageID.595-596); however, even looking at the most recent transaction history in the record of this case, the Court does not see a $5,000 "positive balance" for March or April 2025 (*see* ECF No. 42, PageID.574).

Plaintiff's pleading also mentions debt in the amount of $403,297.82 (*see* ECF No. 1, PageID.3), but the Court has not found this amount in the records of this case, although it is certainly close in number to the $404,062.89 amount claimed to be due in the May 2025 affidavit of publication and evidence of sale posting (ECF Nos. 14-10, 14-11).

### v.      Summation

Notwithstanding any lack of clarity in Plaintiff's force-placed insurance claim or in other amounts within the pleading, the Court has made every reasonable attempt to understand Plaintiff's pleading.  In sum, Davis-Harris alleges that, on April 23, 2025, she received an inaccurate debt collection letter (ECF No.

1, PageID.5 ¶ 1.6), there is evidence she demanded validation of the debt on or about May 8, 2025 (ECF No. 14-8), and there is evidence of a May 12, 2025 response, albeit on OLG letterhead (ECF No. 14-9).

In her response, Plaintiff claims that "evidence from Comerica Bank will show electronic payments made and sent to [CMS] . . . [,]" (ECF No. 32, PageID.507 ¶ 55), and, within her subsequent filings, she contends that Defendants have provided "false accounting" and "backdated invoices . . . [,]" (ECF No. 42, PageID.560), that the "different" invoices "show that they were falsely made to deceive the Plaintiff[,]" (*id.*), that she has received three versions of CMS statements (ECF No. 43, PageID.596-597), presumably including the chart attached to the May 12, 2025 response (ECF No. 14-9) and the chart dated June 25, 2025 (ECF No. 42, PageID.574-587, 591-593), and that CMS's versions do not show "a refund or a credit[,]" (ECF No. 43, PageID.598).

Still, Plaintiff's complaint – along with the documentation of the matters referred to therein – does not state a plausible claim that CMS has violated its obligation to obtain and provide Plaintiff with "verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor[.]"  15 U.S.C. § 1692g(b).

21

Finally, the complaint contains indicia that Plaintiff may have intended an FDCPA claim based on 15 U.S.C. § 1692e ("False or misleading representations"), and this warrants comment consistent with the interpretation of *pro se* complaints. *See Haines*, 404 U.S. at 520.  For example, Plaintiff alleges that Defendants "misrepresented the character amount[,]" (ECF No. 1, PageID.8), which is perhaps a reference to 15 U.S.C. § 1692e(2)(A) ("The false representation of . . . the character, amount, or legal status of any debt" is a violation of Section 1692e.). Plaintiff also alleges "Defendants used false and misleading representation[,]" further alleging that "[d]ebt collectors cannot make false or misleading statements about the debt, the amount owed, or the identity of the collector[,]" (ECF No. 1, PageID.8-9), which is perhaps a reference to 15 U.S.C. § 1692e's general provision that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  However, if Plaintiff intended a cause of action based on 15 U.S.C. § 1692e, the allegations are conclusory as to falsity or deception or misleading representation.

### 3.   RESPA

In Count III, Plaintiff alleges violation of the RESPA (ECF No. 1, PageID.9-10), which is codified at 12 U.S.C. §§ 2601-2617.  Within this cause of action, Plaintiff cites various subsections of 12 U.S.C. § 2605 ("Servicing of mortgage loans and administration of escrow accounts").  (ECF No. 1, PageID.9-10.)

22

> **a.** **12 U.S.C. § 2605(e) ("Duty of loan servicer to respond to borrower inquiries")**

Plaintiff's RESPA cause of action expressly cites 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2).  (ECF No. 1, PageID.9-10.)  CMS argues that Plaintiff "has failed to state a claim under RESPA."  (ECF No. 14, PageID.100-101.)  To begin, CMS contends Plaintiff's February 21, 2023 letters (*see* ECF Nos. 14-5, 14-7), which it allegedly received on February 24, 2023 and February 28, 2023 (*see* ECF No. 14, PageID.100-101 n.6), "did not meet the definition of a Qualified Written Request [("QWR")] within the meaning of RESPA[,]" because the letters "did not request information about the servicing of the loan as contemplated by 12 U.S.C. § 2605(e)(1)(A) and 2605(i)(3)" and "did not identify any errors with the loan as required by 12 U.S.C. § 2605(e)(1)(B)(ii)."  (ECF No. 14, PageID.100-101.)

Notwithstanding CMS' June 23, 2025 argument that Plaintiff's February 21, 2023 letters were not QWRs, Plaintiff's August 13, 2025 response does not mention the RESPA, 12 U.S.C. §§ 2601-2617, qualified written request, or QWR.  (*See* ECF No. 32, PageID.491-507.)  The same is true of Plaintiff's September 12, 2025 objection, excluding the attachments.  (*See* ECF No. 42, PageID.560-564.)  Thus, Plaintiff appears to concede that her February 21, 2023 letters were not QWRs, which would be fatal to a cause of action based on 12 U.S.C. § 2605(e).

23

And, if Plaintiff intended this claim to relate to her May 8, 2025 debt validation

demand (*see* ECF No. 14-8), OLG's May 12, 2025 response explained:

> To the extent that you seek additional information through a Qualified
> Written Request, or QWR, our office is not the appropriate entity to
> contact for that information.  The Real Estate Settlement Procedures
> Act, or RESPA, provides that Qualified Written Requests must be
> properly directed to your loan servicer to be effective. Orlans does not
> accept service of Qualified Written Requests on behalf of its clients,
> and therefore that information must be requested from your servicer.

(ECF No. 14-9, PageID.241-242.)[8]

### b.       12 U.S.C. § 2605(k)(1)(D)

Plaintiff's RESPA cause of action also expressly cites Section

2605(k)(1)(D), which provides that "[a] servicer of a federally related mortgage

shall not . . . fail to respond within 10 business days to a request from a borrower to

provide the identity, address, and other relevant contact information about the

owner or assignee of the loan."  (ECF No. 1, PageID.9.)  Plaintiff alleges that

Defendant CMS "did not respond within 10 business days to a request from a

borrower[,]" and she "was informed that [BONYM] is [n]ot the Bank or the owner

of the property."  (ECF No. 1, PageID.9-10.)   Perhaps related to this cause of

action are Plaintiff's allegations that Defendants have "failed to verify and provide

documentation as requested on name of the owner, legal right to Foreclose, and

---

[8] Having arrived at this conclusion, this report does not address CMS's related
RESPA argument that Plaintiff "has failed to sufficiently allege actual damages."
(ECF No. 14, PageID.101.)

validation of the debt on the property located at 24568 Pembrooke Drive[,] Southfield, Michigan, 48033[,]" and "failed to provide verification of the Plaintiff['s] request for the owner of the property or who owns the loan." (ECF No. 1, PageID.1, 3.) Thus, it would appear Plaintiff's 12 U.S.C. § 2605(k)(1)(D) claim is based on the timing of the servicer's response, as well as its content.

Preliminarily, as noted above, the mortgage at issue in this case was assigned to BONYM in October 2013. (ECF No. 14-3.) Further, the August 25, 2017 notice of servicing transfer indicates that BONYM is the "Current Creditor." (ECF No. 14-4, PageID.146.) More to the point, to the extent Plaintiff alleges CMS "fail[ed] to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan[,]" 12 U.S.C. § 2605(k)(1)(D), CMS's February 24, 2023 and March 1, 2023 letters each stated:

> Our records indicate the current investor or note holder of the loan is THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2007-12. Carrington is the current servicer of this loan on behalf of the investor or trustee. The investor or holder may be contacted through Carrington at P.O. Box 5001, Westfield, IN 46074, Fax 1-800-486-5134, or by telephone at 1-800-561-4567.

(ECF Nos. 14-12, PageID.312 (emphases added); ECF No. 14-13, PageID.316 (emphases added).) Thus, the record indicates that CMS responded to Plaintiff's letters dated February 21, 2023 (*see* ECF Nos. 14-5, 14-7) with letters identifying

25

the "current investor or note holder" and dated three days or eight days later, *i.e.*, within 10 business days.  Additionally, CMS's April 28, 2023 letter identifies BONYM as the "current owner of the Note . . . [,]" (ECF No. 14-6, PageID.158), and OLG's May 12, 2025 letter identifies BONYM as the "Current Mortgagee[,]" (ECF No. 14-9, PageID.241).[9]  As such, Plaintiff's complaint – along with the documentation of the matters referred to therein – does not state a plausible claim that CMS has violated either the timing or the content requirements of 12 U.S.C. § 2605(k)(1)(D).

### 4.    Slander of Credit

In Count IV, Plaintiff seeks to recover for "slander of credit," specifically alleging:  "The Plaintiff allege that the actions and inactions of the defendants have impaired their credit causing them to lose the ability to have good credit entitling, them to damages, including statutory punitive damages pursuant to state and

---

[9] Incidentally, the Court is somewhat mystified by Plaintiff's May 30, 2025 allegation that BONYM "is [n]ot the [b]ank or the owner of the property."  (*See* ECF No. 1, PageID.10.)  Within her August 13, 2025 response she contends Defendant "clearly violates the purpose of § 1692g(a)(2), which is to identify the current owner of the debt," (ECF No. 32, PageID.503 ¶ 32).  Within her September 12, 2025 objection, she challenges the October 2013 assignment of the mortgage, contending CMS and OLG "lack standing to foreclose[,]" and states, *inter alia*: "[BONYM] stated it does not own the property or the loan.  The statement is true. MERS does not recognize [BONYM] as a[n] owner or a Lender."  (ECF No. 42, PageID.562-563.)  Yet, even CMS's June 25, 2025 letter attached to Plaintiff's September 12, 2025 objection – a letter which was allegedly a response to inquiries CMS received on May 12, 2025 and May 16, 2025 – also informed Harris that BONYM was the "current owner of the Note . . . ."  (ECF No. 42, PageID.592.)

federal law, all to be proved at the time of trial" (ECF No. 1, PageID.10.)

However, to the extent Plaintiff alleges that CMS has "impaired [her] credit[,]" she

has not "identified any authority for [her] claim," and "the Court is not aware of

any authority for such a cause of action[.]" *Robbins v. Mortg. Elec. Registration*

*Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443, at *7 (W.D. Mich. Nov. 9, 2009).

*See also Gathing v. MERS, Inc.*, No. 1:09-CV-07, 2010 WL 889945, at *18 (W.D.

Mich. Mar. 10, 2010) ("Plaintiff does not allege statutory authority or facts to

support a claim of 'slander of credit' arising from a mortgage foreclosure, and this

court has declined to recognize such a claim.").

Moreover, if Plaintiff intended to allege a claim under the Fair Credit

Reporting Act (FCRA), she does not allege which of its many sections – *i.e.*, 15

U.S.C. §§ 1681-1681x – was violated.  Indeed:

> . . . a liberal read of the complaint to include a FCRA claim does
> [Plaintiff] no favors, as the Sixth Circuit "has repeatedly held that
> consumers must file a dispute with a consumer reporting agency"
> before asserting a private cause of action.  *Scott [v. First S. Nat'l
> Bank*, 936 F.3d 509, 517 (6th Cir. 2019)] (citing cases).

*Jones v. Bengtson*, No. 2:21-CV-10181, 2021 WL 4047385, at *6 (E.D. Mich.

Aug. 3, 2021) (Altman, M.J.), *report and recommendation adopted sub nom. Jones*

*v. Bengston*, No. 21-10181, 2021 WL 4034218 (E.D. Mich. Sept. 3, 2021)

(Lawson, J.).  Plaintiff's "slander of credit" cause of action (*see* ECF No. 1,

PageID.10) does not allege that "she filed a dispute with the consumer reporting agency before filing this lawsuit[.]"  (ECF No. 14, PageID.103.)

Accordingly, Count IV "will be dismissed for failure to state a claim." *Robbins*, 2009 WL 3757443, at *7.

### 5.     State Law Claims

Plaintiff's complaint also alleges common law and/or state law violations. For example, within Count I, Plaintiff alleges that Defendants "failed to follow proper procedures when performing a non-judicial foreclosure[,]" (*id.*, PageID.8). In Michigan, foreclosure of mortgages by advertisement are governed by Mich. Comp. Laws §§ 600.3201-600.3285.  Citing Section 600.3204, CMS argues that Plaintiff "has failed to plead facts sufficient to preclude the foreclosure from proceeding."  (ECF No. 14, PageID.94-98.)  Also, within Count III, Plaintiff cites to Mich. Comp. Laws Ann. § 445.903 ("Unfair, unconscionable, or deceptive methods, acts, or practices; promulgation of rules") of Michigan's Consumer Protection Act, Mich. Comp. Laws §§ 445.901-445.922.  (*See* ECF No. 1, PageID.10.)  (*See also* ECF No. 32, PageID.496-497; ECF No. 42, PageID.561-562.)  Additionally, within Count V, Plaintiff alleges infliction of emotional distress.  (ECF No. 1, PageID.11).  CMS argues Plaintiff's tort claims "are barred by the economic loss doctrine and fail to state a claim[.]"  (ECF No. 14, PageID.103-108.)

However, if this Court agrees with the foregoing recommendations as to Plaintiff's federal law claims, then the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims to the extent they are brought against CMS. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

**E.     Conclusion**

For all of the reasons stated above, the Court should **GRANT** Defendant CMS's motion to dismiss (ECF No. 4).

**III.     PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but they are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

29

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 28, 2026

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE